## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL CASE NO. |
| v. | 3:15-cr-00012-TCB-RGV |
| CHARLES CARROLL | |

## FINAL REPORT, RECOMMENDATION, AND
## ORDER ON DEFENDANT'S PRETRIAL MOTION

Defendant Charles Carroll ("Carroll"), is charged in a two-count indictment with knowingly distributing child pornography by computer and cellular telephone, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and with knowingly possessing at least one computer and computer storage device containing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). [Doc. 1].[1] Pending before the Court is Carroll's motion to suppress evidence, [Doc. 13], which the government opposes, [Doc. 15]. Carroll has filed a reply in support of his motion to suppress, [Doc. 16], and the pending motion is ready for ruling. For the reasons that follow, it is **RECOMMENDED** that Carroll's motion, [Doc. 13], be **DENIED**.

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

## I.  STATEMENT OF FACTS

On October 16, 2014, Special Agent Sara Thomas ("Agent Thomas"), of the Georgia Bureau of Investigation's Child Exploitation and Computer Crimes Unit, applied for and received a search warrant for Carroll's residence located at 11 Laurel Drive, Newnan, Georgia.  [Doc. 13-1].  In her affidavit in support of the application for the search warrant, Agent Thomas recounted her employment history, [Doc. 13-1 at 4], described how file-sharing networks are used to trade child pornography, [id. at 4-7], and then detailed an investigation that began on October 6, 2014, [id. at 8-9].

Agent Thomas explained that peer-to-peer file-sharing networks "are frequently used in the trading of child pornography," and that one such network is known as the "Ares" network, which is an "open source public file-sharing network," and that "[m]ost computers that are part of this network are referred to as peers or hosts."  [Id. at 4].  "Peers may be elevated to temporary indexing servers referred to as an 'ultra-peer,'" and ultra-peers maintain "an index of the contents of network peers."  [Id.].[2]  She explained that users of the Ares network may set up files on a computer to be shared with others running a compatible software program and the user then obtains files by opening the Ares software on the user's computer and conducting searches for files that are currently being shared on another user's

---

[2] Agent Thomas relayed that "Ares users query ultra-peers for files that are directed to one or more peers sharing that file."  [Doc. 13-1 at 4].

computer.  [Id. at 4-6].  The Ares software "allows the user to search for pictures, movies and other files by entering descriptive text as search terms," and "files located in a peer's shared directory are processed by the client software" and a "Secure Hash Algorithm (SHA)" is "loaded from a prior record or computed for each file in the user's shared directory."[3]  [Id. at 5-6].  "Upon connecting to the Ares network, the Ares client compiles a list of the shared files, files details, and the file's associated SHA1 values and submits the list to the ultra-peers," [id. at 5], and "[e]ntering search terms into an Ares client returns a list of files and descriptive information including, in some client software, the associated SHA1 signature," [id. at 6].  Agent Thomas explained that the "SHA1 signatures of files being shared on the network" may be compared to "previously identified SHA1 signatures of any file including child pornography," and that "[o]nce a specific file is identified, the download process can be initiated."  [Id.].  She further explained that once the process is initiated, "a user is presented with a list of peers or [Internet Protocol

---

[3] Agent Thomas described that SHA Version 1 ("SHA1") "is a file encryption method which may be used to produce a unique digital signature of a file," that a SHA1 "hash value is loaded from a prior record or computed for each file in the user's shared directory," and that "[i]t is computationally infeasible . . . to find two different files that produce the same SHA-1 value."  [Doc. 13-1 at 5].  She also relayed that the Ares network "uses SHA1 values to improve network efficiency."  [Id.].

('IP')] addresses[4] that have recently been identified as download candidates for that file," which "allows for the detection and investigation of computers involved in possessing, receiving and/or distributing files of previously identified child pornography," and that the "IP addresses can be used to identify the location of these computers." [Id. at 6-7 (footnote added)]. Finally, Agent Thomas described that the "automated program Ares RoundUp, which was utilized in this investigation, allows law enforcement officers to directly download from peers (nodes) who have been identified in their jurisdiction as having notable files (or files of interest) on the Ares Network available for downloading," and that "[b]y receiving either a file list or portions of a download from a specific IP address the investigator can conclude that a computer, likely to be in this jurisdiction, is running a Ares client and possessing, receiving and/or distributing specific and known visual depictions of child pornography."[5] [Id. at 7 (first alteration in original)].

---

[4] Agent Thomas explained that an IP address "is similar to a mailing address" and that "[e]ach internet session is assigned a unique IP number or address." [Doc. 13-1 at 7]. She described that "Internet Service Providers (ISP) maintain logs which indicate which subscriber was using a particular IP address at any given time." [Id.].

[5] Agent Thomas defined "files of interest" as "files that were previously viewed by law enforcement and determined to contain child pornography and can later be identified based on the files' SHA1 values." [Doc. 13-1 at 7]. She also explained that Ares RoundUp "is a cooperative effort with the Pennsylvania State Police, Massachusetts State Police, University of Massachusetts Amherst, and Georgetown University, that automates the process of browsing the shared folder

After providing this background information, Agent Thomas relayed that on October 6, 2014, Special Agent Charles Kicklighter ("Agent Kicklighter") referred a case to her as part of "Operation Masqueraid" that involved the IP address of 107.197.28.49, which, according to Agent Kicklighter, was "located on the peer to peer file sharing program, Ares, offering suspected 'files of interest' available for sharing."  [Id. at 8].  Agent Thomas explained that associated with this IP address was the "Ares nickname of anon_6bc51c31@Ares," and that Agent Kicklighter directly connected with the computer and downloaded two "files of interest containing suspected child pornography from the IP address."  [Id.].  She also detailed that Agent Kicklighter issued a subpoena for the production of subscriber information for the IP address at issue, and AT&T replied and identified Carroll as the subscriber with the address of 11 Laurel Drive, Newnan, Coweta County, Georgia.  [Id.].

Agent Thomas viewed the two files of interest and she averred that based on her training and experience, she believed both files contained images of child pornography.  [Id.].  She described that the files had the following names: "!new pthc dark studio]227.mpg" and "! new ! (pthc) veronika little sister bj and cum

_____

of target peers (nodes) found on the Ares network with child pornography available for sharing," and that "when a browse or download is made, the target's IP address is identified as well as the [ISP]."  [Id. (first alteration in original)].

inside mouth.wmv," and she explained that "'PTHC' is a common search term used by subjects in investigations related to child exploitation that stands for 'pre-teen hard core.'"  [Id.].

On October 8, 2014, Agent Thomas surveilled the Laurel Drive location and photographed the residence, which she described as "a light yellow or beige in color single family level structure with a dark colored roof" and a "black in color mailbox located at the end of the driveway with the numbers '11' on the post."  [Id.].  She also described that the front of the residence faced Laurel Drive.  [Id.].  She averred that she and Coweta County Sheriff's Investigator Jason Fetner also surveilled the residence between October 9 and October 16, 2014, and that during that time, she "found no open wireless networks in the proximity of the suspect residence."  [Id.].[6] Based on these facts, Agent Thomas stated that she believed there was probable cause that evidence of "violations of O.C.G.A. 16-12-100(b)(8), possession of child pornography [would be] located within the residence and/or vehicles located at 11

---

[6] Agent Thomas averred that based on her knowledge and experience, "individuals who upload, download, or provide links to images of child pornography are almost always collectors of child pornography or child erotica" and that "[t]hese individuals do not merely view the pornography, they save it." [Doc. 13-1 at 9].  She also averred that "[c]ollectors of child pornography use computers to organize their collections and correspondence," and she then explained why a complete search and seizure of information from computers typically requires seizure of all electronic storage devices and related "peripherals." [Id. at 9-16].

Laurel Drive, in Newnan, Coweta County, Georgia, and any computer(s) located there in," [id. at 16 (second alteration in original)], and a Coweta County Superior Court Judge signed the search warrant on October 16, 2014, authorizing law enforcement to search the residence and curtilage located at 11 Laurel Drive, including any outhouses, vehicles, and secondary structures for the following items: electronic data processing and storage devices; computers and computer systems, including internal and peripheral storage devices; peripheral input/output devices, including keyboards, printers, video display monitors, optical readers, and related communications devices; backup media; system documentation; software and instruction manuals; image files, either printed or electronic, that "constitute evidence of a violation of O.C.G.A. 16-12-100(b)(8), possession of child pornography"; movie files, that "constitute evidence of a violation of O.C.G.A. 16-12-100(b)(8), possession of child pornography"; all of the above records whether stored on paper, on magnetic media, or on memory storage devices; books, magazines, articles, newspapers, photographs, negatives, slides, movies, albums, drawings, audiotapes, videotapes, personal letters, diaries, paintings, photographic equipment that "would tend to show contact with minors or would constitute evidence of a violation of O.C.G.A. 16-12-100(b)(8) possession of child pornography"; cellular telephones "which can now be used to take, and transmit

7

image files and movie files as well as text messaging, that constitute evidence of a violation of O.C.G.A. 16-12-100(b)(5), possession of child pornography"; and digital communications, printed or electronic, that "constitute evidence of a violation of O.C.G.A. 16-12-100(b)(8), possession of child pornography," [id. at 1-2 (emphasis omitted)].

## II.  ANALYSIS

Carroll argues that the October 16, 2014, search warrant for his residence was invalid because the affidavit upon which it was obtained lacked sufficient probable cause since it "failed to provide the necessary information showing that the files downloaded into [his] computer contained depictions that comported with the types of sexual activities that constitute a violation of the Georgia statute,"[7] and that the

---

[7] O.C.G.A. § 16-12-100 pertains to the sexual exploitation of children and subsection (b)(5) provides that "[i]t is unlawful for any person knowingly to create, reproduce, publish, promote, sell, distribute, give, exhibit, or possess with intent to sell or distribute any visual medium which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct," while subsection (b)(8) provides that "[i]t is unlawful for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct."  O.C.G.A. § 16-12-100(b)(5), (b)(8).  This statute also provides a definition of "sexually explicit conduct" that involves nine categories, including sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; lewd exhibition of the genitals or pubic area of any person; flagellation or torture by or upon a person who is nude; condition of being fettered, bound, or otherwise physically restrained on the part of a person who is nude; physical contact in an act of apparent sexual stimulation or gratification with any person's unclothed genitals, pubic area, or buttocks or with a female's nude breasts; defecation or urination for

"failure to describe the images believed to be in the computer in [his] home, precluded the issuing judge from determining for himself whether the images in fact constituted child pornography[.]" [Doc. 13 at 7]. Carroll also argues that the search warrant lacked the requisite particularity, [id. at 8-10], and that the good faith exception does not apply in this case, [id. at 10-12]. The Court will address each of these arguments in turn.

1. *Probable Cause*

The Eleventh Circuit has explained the Court's review of the sufficiency of a search warrant as follows:

> When called upon by law enforcement officials to determine the legitimacy of search warrants and their supporting affidavits, issuing magistrates and reviewing courts alike must strike a delicate balance between constitutional guarantees against excessive intrusions into areas of individual freedom and the Government's need to access and to secure relevant evidence in criminal prosecutions. In particular, issuing magistrates are given the unenviable task of making "firing line" decisions that attempt to encourage availment of the warrant process while simultaneously striving to protect citizens from unwarranted governmental interference. In recognition of the difficulty inherent in discharging this responsibility, reviewing courts

---

the purpose of sexual stimulation of the viewer; or penetration of the vagina or rectum by any object, with the exception of when done as part of a recognized medical procedure. See O.C.G.A. § 16-12-100(a)(4)(A)-(I). This definition largely mirrors federal law defining "sexually explicit conduct" with respect to child pornography. See 18 U.S.C. § 2256(2)(A)(i)-(v) (defining "sexually explicit conduct" as actual or stimulated sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person).

lend substantial deference to an issuing magistrate's probable cause
determinations.

United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994). "The Fourth Amendment
requires that a search warrant be issued only when there is probable cause to believe
that an offense has been committed and that evidence exists at the place for which
the warrant is requested." United States v. Betancourt, 734 F.2d 750, 754 (11th Cir.
1984) (citing Zurcher v. The Stanford Daily, 436 U.S. 547, 558 (1978)); see also United
States v. Cadet, Criminal Action Nos. 1:11-CR-00522-WBH-LTW, 1:11-CR-00113-
WBH-LTW, 2013 WL 504892, at *4 (N.D. Ga. Jan. 16, 2013), adopted by 2013 WL
504815, at *1 (N.D. Ga. Feb. 8, 2013), aff'd, 574 F. App'x 917 (11th Cir. 2014) (per
curiam) (unpublished) (citation omitted).  That is, "[p]robable cause to search a
residence requires some nexus between the premises and the alleged crime." United
States v. Joseph, 709 F.3d 1082, 1100 (11th Cir. 2013) (citation and internal marks
omitted). "Probable cause deals 'with probabilities [which are] . . . the factual and
practical considerations of everyday life on which reasonable and prudent men, not
legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 241 (1983) (quoting Brinegar
v. United States, 338 U.S. 160, 175 (1949)); see also United States v. Spann, No.
15–20070, 2015 WL 1969111, at *3 (S.D. Fla. May 1, 2015) (citation omitted).

"Courts reviewing the legitimacy of search warrants should not interpret
supporting affidavits in a hypertechnical manner." Miller, 24 F.3d at 1361 (citation

omitted).  Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Id. (citations omitted); see also United States v. McCullough, Criminal Indictment No. 1:11–CR–136–JEC/AJB–01, 2012 WL 11799871, at *13 (N.D. Ga. Oct. 9, 2012), adopted by 2014 WL 3955556, at *2 (N.D. Ga. Aug. 13, 2014) (citations omitted). Furthermore, "[t]he fact than an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (citations omitted); see also Adams v. Williams, 407 U.S. 143, 149 (1972) (citation omitted).

Carroll contends that the search warrant affidavit is deficient because Agent Thomas "merely offers her subjective opinion that the files reviewed contain child pornography, offering no description of what was depicted in terms of sexual content, and providing no basis to conclude that any individuals depicted were minors within the meaning of the statute." [Doc. 13 at 5].  He also contends that the affidavit is deficient because it fails to "connect up what was allegedly in the[] two files, to the statutory definition of 'sexually explicit conduct,'" and that Agent Thomas "justified her request for a search by telling the issuing judge: in essence, trust me, there is child pornography in files that I have identified as being in

11

Carroll's computer(s)." [Id. (last alteration in original)].  He maintains that aside from providing the title of one file, Agent Thomas "never states what is actually contained in this file, leaving an issuing court with merely speculation," and that she therefore "did not provide probable cause so as to allow the issuing judge to conclude that the files sent to [his] computer came within the definition of 'child pornography.'" [Id. at 7 (footnote omitted)].

Contrary to Carroll's contention, Agent Thomas' affidavit alleged sufficient facts to establish probable cause to believe that evidence of a crime would be found in his residence.  Indeed, "[t]here is no requirement in this Circuit that a judge reviewing a search warrant application must examine the images reflecting alleged child pornography," and "a judge may properly issue a warrant based on factual descriptions of an image."  United States v. Wilson, Criminal Action File No. 4:12–CR–00023–RLV–WEJ, 2012 WL 7992597, at *8 (N.D. Ga. Nov. 28, 2012), adopted by 2013 WL 1800018, at *1 (N.D. Ga. Apr. 26, 2013) (citations omitted); see also United States v. Smith, 459 F.3d 1276, 1291 n.15 (11th Cir. 2006) ("While it may have been prudent for the magistrate judge to view the photos independently, we cannot say that, as a matter of law, the court must view the evidence to determine whether probable cause existed.").  Thus, the issuing judge "appropriately relied on [Agent

Thomas'] descriptions of the images and was not required to review them,"[8] and the "issue then is whether those descriptions were sufficient to establish probable cause." <u>Wilson</u>, 2012 WL 7992597, at *8.

Agent Thomas averred that she viewed the two files of interest, which were titled, ""!new pthc dark studio]227.mpg" and "! new ! (pthc) veronika little sister bj and cum inside mouth.wmv," and that based on her training and experience, both files contained images of child pornography.  [Doc. 13-1 at 8].  She also averred that "pthc" as referenced in the titles of the two files is a common search term used for "'pre-teen hard core.'"  [<u>Id.</u>].  She further averred that these files were considered "files of interest," which she explained were "files that were previously viewed by law enforcement and determined to contain child pornography and [could] later be identified based on the files' SHA1 values."  [<u>Id.</u> at 7-8].  While Carroll argues that

---

[8] In fact, "an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." <u>New York v. P.J. Video, Inc.</u>, 475 U.S. 868, 875 (1986) (footnote omitted).  And, "[t]he term probable cause, . . . means less than evidence which would justify condemnation. . . . It imports a seizure made under circumstances which warrant suspicion . . . Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision."  <u>Id.</u> at 876 (second and fourth alterations in original) (citations and internal marks omitted).  That is, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules," <u>Gates</u>, 462 U.S. at 232, and "[c]ertainty has no part in a probable cause analysis," <u>United States v. Frechette</u>, 583 F.3d 374, 380 (6th Cir. 2009) (citation omitted).

reference to the titles of the files coupled with Agent Thomas' training and experience and her belief that the files contain images of child pornography as defined by the statute is insufficient, a search warrant affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that "there is a fair probability that contraband or evidence of a crime will be found in a particular place," United States v. Lebowitz, 647 F. Supp. 2d 1336, 1344 (N.D. Ga. 2009), adopted at 1342 (emphasis, citation, and internal marks omitted); see also United States v. Rousseau, No. 14–14506, 2015 WL 6118716, at *1 (11th Cir. Oct. 19, 2015) (per curiam) (footnote and citation omitted), and "merely identifying an alternative, non-criminal explanation for the information in a warrant is not sufficient to render it defective, unless that explanation eliminates the fair probability that evidence of criminal activity will be found at the described location," United States v. Mutschelknaus, 592 F.3d 826, 829 (8th Cir. 2010) (citation omitted).  The Eleventh Circuit has not addressed the precise issue presented here of how detailed a description of an image in an affidavit in support of a search warrant application should be to establish probable cause.  However, the Court finds persuasive the Third Circuit's decision in United States v. Beatty, 437 F. App'x 185 (3d Cir. 2011) (unpublished).

In <u>Beatty</u>, the defendant was charged with possessing and distributing child pornography, in violation of 18 U.S.C. §§ 2252(a)(2), (a)(4)(B), (b)(1), and (b)(2). <u>Id.</u> at 186. He moved to suppress evidence seized from his residence and computer pursuant to a search warrant, arguing that the affidavit, which "included the process by which the files were retrieved and the exact name of each file," as well as that the files' SHA1 values matched with "known child pornography files," lacked probable cause because "no one involved in the issuance of the warrant viewed the files, which, combined with the lack of a reasonably specific description of the contents of the files, did not allow the magistrate judge to make an independent assessment of probable cause." <u>Id.</u> at 186-87 (citation omitted). The district court found that "the highly graphic titles of the files . . . and [the agent's] confirmation that these same files were among those identified . . . as known child pornography[] was enough to establish probable cause that evidence of a crime would be found on [the defendant's] computer." <u>Id.</u> (first alteration in original) (citation and internal marks omitted). The Third Circuit affirmed the district court's decision, noting that the "graphic titles of the files found on [defendant's] computer contained highly graphic references to specific acts involving children" and that the "SHA 1 values belonging to the files on [defendant's] computer bore the same SHA 1 values as known child pornography," and finding that "[t]ogether, these factors allowed a strong inference

to be made by the magistrate judge which establishes probable cause." Id. at 188 (footnote, citation, and internal marks omitted).  Thus, the Third Circuit held that "the District Court correctly concluded that the Magistrate Judge was entitled to infer from the highly descriptive and graphic file names and the other information presented in the affidavit [the SHA 1 values] that there was a fair probability that [defendant's] computer would contain material prohibited under [the statute]." Id. (first alteration in original) (footnote and internal marks omitted); see also United States v. Miknevich, 638 F.3d 178, 182-84 (3d Cir. 2011) (finding search warrant affidavit, though "in parts, inartfully drafted" and "leaves a clear impression[] [that] the state magistrate was presented with an affidavit that provided no factual details regarding the substance of the images in question," was supported by probable cause to believe that defendant possessed child pornography on his computer where the "magistrate could have drawn a reasonable inference of the file's contents based on its highly descriptive name[, which included a description suggesting minors engaged in sexually explicit conduct,] and SHA1 value").

Likewise, the affidavit here provided the issuing judge the titles of the two files of interest downloaded from Carroll's computer as "!new pthc dark studio]227.mpg" and "! new ! (pthc) veronika little sister bj and cum inside mouth.wmv," with an explanation that "pthc" "is a common search term used by

16

subjects in investigations related to child exploitation that stands for 'pre-teen hard core.'" [Doc. 13-1 at 8]. The reference to "pthc" in both titles suggests that a minor is depicted in a "hard core" video, and the very graphic title of the second file supports finding that it depicts a minor engaged in sexually explicit conduct as defined under the statute. See O.C.G.A. § 16-12-100(a)(4)(A). This highly graphic title combined with Agent Thomas' information that this particular file was considered a "file of interest," meaning that it had been "previously viewed by law enforcement and determined to contain child pornography[] [that could] later be identified based on [its] SHA1 value[]," [id. at 7],[9] and that she had also viewed the files and that based on her training and experience, both of the files of interest contained images of child pornography, [id. at 8], is sufficient to show "a fair probability [] that contraband would be found at [Carroll's] residence [o]n his personal computer," United States v. Stults, 575 F.3d 834, 844 (8th Cir. 2009) (citation omitted); see also United States v. Righter, No. 4:11CR3019, 2011 WL 2489949, at *3-4 (D. Neb. May 19, 2011), adopted by 2011 WL 2470673, at *1 (D. Neb. June 21, 2011); United States v. Gabel, No. 10–60168, 2010 WL 3927697, at *9 (S.D. Fla. Sept. 16,

---

[9] "[N]umerous courts have concluded that SHA1 values constitute a reliable basis on which to find probable cause that a computer contains images of child pornography even where the files have not been opened and viewed directly on a defendant's computer." United States v. Bershchansky, 958 F. Supp. 2d 354, 374 (E.D.N.Y. 2013), aff'd, 788 F.3d 102 (2d Cir. 2015) (citations omitted).

2010), adopted by 2010 WL 3894134, at *1 (S.D. Fla. Oct. 4, 2010), aff'd, 470 F. App'x

853 (11th Cir. 2012) (per curiam) (unpublished).

In sum, Carroll's argument overlooks the fact that the "Supreme Court has

warned lower courts of the error of not consider[ing an officer's] affidavit in its

entirety and judging bits and pieces of information in isolation." Lebowitz, 647 F.

Supp. 2d at 1345 (alteration in original) (internal marks omitted) (quoting

Massachusetts v. Upton, 466 U.S. 727, 732 (1984) (per curiam).   Carroll fails to

acknowledge all the facts set forth in the affidavit as a whole, and the Court finds

that the affidavit included sufficient information to establish probable cause to

believe that evidence of the alleged crime would be located in Carroll's residence

and on his computer.   Therefore, Carroll's contention that Agent Thomas' affidavit

did not establish probable cause is without merit.

### 2.      *Particularity of the Warrant*

Carroll moves to suppress all evidence seized from his residence due to lack

of particularity because the search warrant "directs the search for various listed

items that 'constitute evidence of a violation of O.C.G.A. § 16-12-100(b) (8),

possession of child pornography,'" but "there is no guidance or limiting language,

setting out what is meant by the term 'sexually explicit conduct.'"   [Doc. 13 at 8-9

(citation omitted)].   Carroll also points out that the search warrant did not

incorporate the affidavit by reference and that the affidavit was not attached to the warrant and therefore could not "cur[e] any ambiguity in the warrant." [Id. at 9].

"The Fourth Amendment requires that a search warrant particularly describe the place to be searched and the things to be seized." Rousseau, 2015 WL 6118716, at *3 (citation omitted). "The manifest purpose of the particularity requirement of the Fourth Amendment is to prevent general searches." United States v. Sharp, Civil Action File No. 1:14–cr–227–TCB, 2015 WL 4644348, at *10 (N.D. Ga. Aug. 4, 2015), adopted at *1 (citation and internal marks omitted). "A general order to explore and rummage through a person's belongings is not permitted," and [t]he warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." United States v. Cook, 657 F.2d 730, 733 (5th Cir. Unit A 1981) (citations omitted);[10] see also Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). "The particularity requirement, however, does not require 'elaborate specificity,'" and the "standard is one of practical accuracy rather than technical nicety." Rousseau, 2015 WL 6118716, at *3 (citation and internal marks omitted); see also United States v. Santarelli, 778 F.2d 609, 614 (11th Cir. 1985) (citations omitted)

---

[10] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

(The description need only be as "specific as the circumstances and the nature of the activity under investigation permit.").

"The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." <u>Groh v. Ramirez</u>, 540 U.S. 551, 557 (2004) (citations omitted). However, the Fourth Amendment does not prohibit "a warrant from cross-referencing other documents." <u>Id.</u> This case presents a situation in which the affidavit was cross-referenced, but not incorporated, in the warrant and was not attached to the warrant itself. Regardless, the face of the warrant here "was written with sufficient particularity because the items listed on the warrant[] were qualified by phrases that emphasized that the items sought were those related to child pornography." <u>Wilson</u>, 2012 WL 7992597, at *15 (citation and internal marks omitted). Indeed, "[l]aw enforcement officers executing the warrant were not unguided and free to rummage through [Carroll's] property," but, rather, "they could search for evidence of child pornography only in certain specified places, such as computers, books, magazines, photographs, videos, etc." <u>Id.</u> (citations omitted).

"When [a] warrant[] specifically connect[s] the items to be searched for and seized to the specific criminal conduct suspected, it weighs in favor of finding that the warrant[] [is] adequately particularized," <u>United States v. Zhu</u>, 555 F. Supp. 2d 1375, 1381 (S.D. Ga. 2008) (citations omitted), and here, the warrant authorized the

20

seizure of items listed in twelve categories that were specifically limited to evidence of violations of "O.C.G.A. 16-12-100: Sexual Exploitation of Children," "O.C.G.A. 16-12-100 (b)(8): Possession of Child Pornography," and "O.C.G.A. 16-1-100 (b)(5): Distribution of Child Pornography," [Doc. 13-1 at 2]. And, "reference to the [sexual exploitation of children] statute itself without parroting its terms is sufficient." United States v. Lamb, 945 F. Supp. 441, 463 (N.D.N.Y. 1996) (citing United States v. Rabe, 848 F.2d 994, 997 (9th Cir. 1988)); see also United States v. Layne, 43 F.3d 127, 133 (5th Cir. 1995) (citation and internal marks omitted) (finding "term[s] 'child pornography' as used in the search warrant . . . . need no expert training or experience to clarify their meaning" and that "officers executing [the] warrant would be sufficiently guided in their discretion to know what items could be seized"); United States v. Hurt, 808 F.2d 707, 708 (9th Cir. 1987) (emphasis, citation, and internal marks omitted) (finding warrant sufficiently particular where it "specifically commanded to search for material depicting minors . . . engaged in sexually explicit activity," noting that "[t]his language sufficiently circumscribed the officers' discretion at the time of the seizure" and that these words "need no expert training or experience to clarify and limit their meaning" as "[a]ny rational adult person can recognize sexually explicit conduct engaged in by children under the age of 16 when he sees it"). Thus, "it is abundantly clear that . . . . [t]he scope of the warrant was

restricted to a search for evidence of child pornography-related crimes and did not permit a free-ranging search," or "a search for evidence of general criminal activity." United States v. Brooks, No. 3:13–cr–58–J–34JRK, 2014 WL 292194, at *11 (M.D. Fla. Jan. 27, 2014), adopted at *2 (citations omitted); see also United States v. Burke, 633 F.3d 984, 992 (10th Cir. 2011) (citation and internal marks omitted) (affirming the district court's decision and finding that a warrant was sufficiently particular where the "charge listed on the warrant [was] the sexual exploitation of a child followed by a statutory reference, a charge narrow enough to meet the fourth amendment's requirement by bring to officers' attention the purpose of the search").

In short, "[t]he particularity requirement of the Fourth Amendment was satisfied here because the warrant identified the types of property authorized to be seized and indicated the crimes involved for which evidence was sought," and therefore "supplied enough information to guide and control the agent's judgment in selecting what to take." United States v. Conrad, No. 3:12–cr–134–J–34TEM, 2013 WL 4028273, at *9 (M.D. Fla. Aug. 7, 2013), adopted at *1 (citations and internal marks omitted); see also United States v. Lisbon, 835 F. Supp. 2d 1329, 1346 (N.D. Ga. 2011), adopted at 1339, aff'd, 559 F. App'x 940 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted) (finding warrant was sufficiently particular where "the items sought . . . were tempered by the object of the search . . . and in relation

to the crimes under investigation"). Accordingly, the Court concludes that the search warrant for Carroll's residence sufficiently particularized the items to be seized and the scope of the search.

### 3. Good Faith Exception

Even if the search warrant in this case were found to be invalid, suppression of the evidence seized from the residence would not be warranted because the officers executing the warrant reasonably relied in good faith on the validity of the warrant. See United States v. Leon, 468 U.S. 897, 919-21 (1984). Under Leon, "the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate." United States v. Sharp, Civil Action File No. 1:14–cr–229–TCB, 2015 WL 4641537, at *14 n.18 (N.D. Ga. Aug. 4, 2015), adopted at *5 (citations and internal marks omitted); see also United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (citation omitted).

There are four exceptions to the Leon good-faith exception doctrine, none of which apply here:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role in the manner

condemned in <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

<u>United States v. Martin</u>, 297 F.3d 1308, 1313 (11th Cir. 2002) (citation and internal marks omitted).   Although Carroll argues that the good faith exception is inapplicable because the affidavit is so lacking in indicia of probable cause that Agent Thomas "could not have reasonably concluded that compliance with the Fourth Amendment was met," and that the warrant is facially deficient in failing to particularize the scope of the search, [Doc. 13 at 12], as discussed *supra*, these arguments are without merit.   In addition, there is nothing in the record that even hints that the judge who reviewed the affidavit and signed the search warrant engaged in any misconduct or abrogation of judicial responsibility.   As discussed *supra*, the affidavit set forth sufficient probable cause, and in any case is not "so lacking . . . as to render official belief in its existence entirely unreasonable." <u>Martin</u>, 297 F.3d at 1313 (citation omitted).

Finally, the warrant is facially valid in that it describes in sufficient detail the things to be seized, the location for the search, and it is signed by a judge.  Officers executing the warrant would therefore have been justified in believing in its validity,

and evidence seized during the execution would not be subject to suppression. Massachusetts v. Sheppard, 468 U.S. 981, 988-89 (1984).  Accordingly, Carroll's motion to suppress evidence is also due to be denied under the good faith exception.

### III.  CONCLUSION

For the foregoing reasons and cited authority, it is hereby **RECOMMENDED** that Carroll's motion to suppress, [Doc. 13], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 3rd day of November, 2015.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

25